by video. I don't see her face. Our video people are not running this session properly. Oh dear. Oh dear is right. I saw Brett's face, our IT fellow. I didn't see Judge King. Well, I'm here. All right. Well, we'll so ignore that blank screen there and Judge King is paying close attention. Case number 2340094, Etheridge v. Samsung and we'll hear first from Mr. Taylor. Thank you and may it please the court. Jonathan Taylor for the plaintiff appellant James Etheridge. I'm going to try to reserve five minutes for rebuttal. We'll see if I get there. Samsung is one of the world's leading manufacturers of 18650 lithium ion batteries and it concedes that it has purposefully availed itself of the privilege of doing business in Texas with respect to 18650. Speak up please. Sure. It concedes that it has directly sold thousands if not millions of these batteries to companies in Texas like Black & Decker, HP and Dell. It concedes that other Texas companies like its distributor ESDI are in its supply chain for these batteries and it does not dispute that many thousands if not millions of these batteries are sitting on Texas shelves in countless consumer products from power drills to laptops. What it does dispute is whether Texas courts can exercise their sovereign power to provide a forum to a Texas resident injured by one of its 18650 batteries in Texas or whether he needs to go abroad to Korea to vindicate his rights which is Samsung's argument. In support of this argument Samsung does not defend the district court's reasoning that there is no personal jurisdiction because Mr. Etheridge has not shown that the particular battery that injured him was one of the batteries that Samsung first sent to Texas and rightly so. That reasoning directly contradicts the Supreme Court's decision in Ford which rejected just such a causal test. But the problem for Samsung is that Ford also announced a rule that expressly governs product liability cases like this one. When a company quote serves a market for a product in a state and that product causes injury in the state to one of its residents the state's courts may entertain the resulting suit and by its terms that rule is satisfied here. Samsung makes only one argument for why this rule shouldn't apply on the record in this case and that's that Mr. Etheridge obtained and used his battery in a way that didn't meet its subjective intentions. But as the Texas Supreme Court has held among many other courts at the urging of the Texas Solicitor General that argument has nothing to do with personal jurisdiction which is fundamentally about the propriety of the exercise of state power. Well why don't we just do away with all the cases that followed international shoe including the Ford case and just say any big international company that can be connected in any way with a with a personal injury can be sued anywhere in the United States. Well I think and suppose think of all the think of all the visitors foreign visitors who could come to the United States and say oh my god I ate bad food this company abroad made the bad food I at the United States give me a forum. Well Judge Jones I don't think you have to go that this far we're not asking this court to do away with Ford we're asking the court. What you're saying is that any resident of any state in the United States who is injured by a product that has worldwide circulation necessarily has a forum in the United States. Not at all Judge Jones. Okay where's the limit? What limit? A couple of limits and the limits are built into the test as articulated by the Supreme Court in Ford. The first limit is the defendant has to serve a market for the very product a very type of product that injured the plaintiff and it's got to do so in the state. Well in Ford in Ford it was Ford vehicles. Right. Okay. That's right and here it's and here it is here it is component parts of things where the consumer is not going to be using the battery in any way. In other words you're basically taking the position okay. No I think I understand the question Judge Jones and what I would say is that I think what maybe your question is sort of putting its finger on is whether the product is in fact the same product and I suppose in some other hypotheticals a component parts manufacturer may be able to say that look this product really isn't the same product that ultimately injured the plaintiff but I think when the product is which is one of the most versatile and interchangeable of all component parts and the defendant here sold batteries individually or in you know large cork cardboard boxes to companies in Texas and then the plaintiff is injured by an individual battery exactly like those that the defendant itself shipped into Texas that there's really no serious argument that that's a different product and so while there might be some edge cases that really do test the it there has to be a relationship among the defendant the forum and the product a relationship in Ford. Ford was an easy case as Justice Alito's concurrence makes clear under the regular law that the court have been evolving for decades because you were talking about Ford motor vehicles sold to the public advertised to the public and so on there are no such connections between this lithium-ion battery and the state of Texas the fact that it gets sold to factories to be implanted such that consumers never touch it is far afield from the facts of Ford. Well I think you're right that there are factual differences between this case and Ford and it could be that if the point is the relationship test. I think that's right but I again I think that goes to the extensiveness of the of the contacts with the forum and in Ford they were particularly extensive here maybe they're a little less extensive but they're still they still sort of sail over the bar of minimum contacts which is why Samsung is not even contesting purposeful availment here it doesn't deny that it serves a market within the state for 18650 batteries it just argues that it serves a different market than the market through which the plaintiff procured the battery. Where did Judge O'Scanlan go wrong in the Ninth Circuit case? So I think I think what you're referring to your honor is the Yamashita case and there that case didn't involve any direct shipments by LG who's the defendant of that case to Hawaii which was the forum state that issued the case and so the court's jurisdictional analysis if you just look at the first half of its opinion it's it applies the stream of commerce plus test of course this this court has always applied the stream of commerce test we don't have to even go that far here because we've got direct shipments and so that's why the first prong isn't satisfied now I think I know where you're going with your question which is the second half of of the of Judge O'Scanlan's opinion in Yamashita in rejecting the defendant's request for jurisdictional discovery does there's a paragraph in that opinion that does seem to sort of have a different understanding of Ford than the one that we're articulating in this case and what I would say there is if you look at the briefing in that case the court didn't really have the full you know the benefit of the full ventilation. Excuse me I think Judge O'Scanlan is perfectly capable of reading Supreme Court cases. I don't disagree with that. Well don't tell me about briefing. Well what I would say Judge Jones is there's that paragraph in that opinion and then there's the unanimous decision of the. So basically you're saying that any product that is has is shipped worldwide can be I mean there are many products that in certain circumstances can be components in other circumstances or end product and the fact that there is no way that a manufacturer can say I realize what I'm shipping is not free of the possibility of risk but I'm sending it into this market to be a component. Would you prefer that that Samsung withdraw from supporting manufacturers in Texas if it feared the courts of Texas sufficiently? Not at all your honor. I think if Samsung there's a lot that it can do to protect itself on the merits. It can write into its contracts with distributors. Don't sell these batteries to individual consumers. It can try to hit this fellow bought it off the internet. What else could Samsung have done to prevent that? It might have an argument on the merits that we don't know how the battery got into this plaintiff's hands other than he bought it on on the internet right? That's right but I think as Ford shows you don't have to prove that the particular product that the plaintiff purchased and the plaintiff was injured by you know was first sold into the state by the defendant in the case and you're right it would be hard to prove that this product was sort of one of the products that was diverted out of Texas and then made its way back in but it's not hard to imagine and I think it's you know the very possibility that there is that kind of causal relationship I think supports the exercise of jurisdiction as the court the Supreme Court that is recognized in Ford and I would also note that you know one of the reasons why this particular plaintiff Mr. Etheridge may have purchased a Samsung battery is because of all the things that Samsung has done to make itself a household name. He didn't I mean Samsung came to him he didn't go to South Korea to learn about Samsung. And what do you mean Samsung came to him? It's one of the world's leading manufacturers of 18650 batteries. Well again we're back to your deal that if you're a big manufacturer you can be sued anywhere for anything. No you've got to serve. I mean you're just you're totally undermining the distinction between general and specific jurisdiction. With respect Judge Jones that's not correct. I want to be clear about this. This is not an anything goes test. States have a core interest in ensuring the products used in their state by residents of their state are safe. This court has recognized that for 40 years running in component part manufacture cases going back to bean dredging. Ford itself recognized that. So when the plaintiff is a resident of the state who used the product and was injured in it by the state that ensures that the state has a substantial connection with the lawsuit. It ensures that the interstate federalism component of the minimum contacts. But so basically you're saying if the plaintiff resides in the state and he gets injured and it's an internationally distributed product the state can the state can handle the case. But again that is not what 40 or 50 years of evolving contacts jurisprudence have said. Well I read the Supreme Court's case in Ford as applying its precedents not overruling them but in any event however you read the pre-existing case law that's what about the cases what about the Woodson case international Volkswagen and the case and I keep forgetting the the involved tires shipped into New Jersey was that a sahi or no Goodyear. Well those cases all again predate Ford and they don't involve a predate Ford but Ford didn't overrule them before it announced a test that I think is directly. No all Ford did was take the test about there must be a connection what a connection or relationship. And it said and or relationship now is or relationship and then it drew a very tight line and it said there are limits. So it's up to the courts to ascertain what limits there are isn't it. And I would say a couple of things on that point. One is again we're just talking about one prong of the three prong test. There's still the requirement of minimum contacts which is purposeful availment conceded here but I think a lot of the cases that you cited kind of grapple with what it means to serve a market and have purposeful availment and other cases will do the same and Ford doesn't touch those cases. And then there's the third prong which is you know the over like the overarching requirement that the exercise of jurisdiction be reasonable. And I could see an argument made in a particular case on a particular record that it wouldn't be. Maybe it's because of hardship maybe it's because of foreseeability what have you. But I don't take Samsung be making argument on that third prong that is independent of its argument on reasonableness. And so I think this case really is ultimately just about reasonableness. And then we get to your point about the kind of the bounds of Ford. Again I think Ford articulates real limits. If we tried to sue in California for example in this case because we believe those courts are a little more sympathetic to plaintiffs we would lose that you know case at the jurisdictional stage because it wouldn't be sufficiently connected for the same reason that the plaintiffs were dismissed in the BMS case which continues to be good law. And I think that shows that this is not an anything goes inquiry. It articulates real limits. There's no forum shopping going on. We sued in the most natural place imaginable. And I just want to give a couple of hypotheticals to illustrate why I think the exercise of jurisdiction is appropriate here. If Mr. Etheridge bought a Black & Decker power drill in Texas, took out the batteries and they later blew up in his pocket there'd be no serious argument that there wouldn't that he couldn't sue Samsung in Texas because there there would be you know the companies tested for because there'd be a causal relationship. And so I think the same would necessarily have to be true in a case like this. Similarly if someone you know who worked in a factory at the Black & Decker plant down in Mission you know picked up one of the batteries and was moving it to the assembly line and it blew up in his pocket he too could sue Samsung on the exact same type of claim in Texas. And I think what that shows is that it's perfectly foreseeable that Samsung when it ships thousands if not millions of this exact kind of battery directly to Texas companies could be held in the court in Texas to stand you know to defend against these type of claims. And I think it also shows why the state has a strong interest in allowing for it to exercise jurisdiction here is consistent with the interstate federalism component of the state always has an interest in protecting its citizens but that can be a in this kind of analysis as far as I'm concerned. I don't know what else I can say to persuade you other than I think this important board did the work for you maybe about 90 percent of the work but I agree with you that it understood its task to to be consistent with pre-existing precedent and to embrace real limits. Okay thank you. Thank you your honor. Yep you have time for rebuttal. Mr. F. Thurgey. Morning your honors. May it please the court. My name is Ray Kutch. I'm here on behalf of Samsung SDI. I'm joined by my counsel Chris Emch. The question before this court is whether Mr. F. Thurgey's claims sufficiently relate to Samsung's limited contacts with Texas and whether Samsung could reasonably expect to defend a e-cigarette injury unrelated to those contacts. I'm not sure how that's as narrow as I mean obviously framed that way it's it's it's hard to disagree with you. I'm just not sure that that's the relevant question. Can you start with the hypotheticals that Mr. Taylor left with? I mean would you agree that if a Black & Decker employee or a Black & Decker consumer had been injured by a Black & Decker Samsung 1850 that you'd be hailed into in the state of Texas? Yes I think that would be a better instance of jurisdiction mostly for a causal relationship between Black & Decker and that employee. And the difference between the 1850 and a Black & Decker hand drill and an 1850 bought on Amazon from Macro Mall is what exactly? One is sealed and the other's not? It's a little more complex than that. For Black & Decker they're a transaction company which you know it's a wildly sophisticated company that has agreements that they won't misuse these batteries and they directly place these cells into battery packs. The thing I get hung up on I hear you and I read this in your brief the thing I'm hung up on is misuse of the product by someone not named SDI is a merits argument right and that's what I'm getting hung up on is that you may win because you could say like look we didn't do anything negligently we put them in these special sealed things and whatever and so we shouldn't be responsible for the blown up in the pocket but I'm trying to figure out why your purposeful availment of the state of Texas's market for 1850 consumers doesn't answer the jurisdictional question. I mean you clearly are sending thousands or millions of these batteries into Texas you're presumably liable or not liable but you're presumably amenable to suit in Texas if something goes wrong because of the ones that you sold to HP and Dell and Black & Decker and others and I'm the thing I'm hung up on is that we're trying to figure out as a jurisdictional matter why you shouldn't be hailed into Texas for the exact same battery just that got here in a different way. Well to answer your question it's it's Samsung's contacts with Texas that matter not so much the product. So we're not even going to look at Mr. Etheridge's use in this situation what we look at and like under Ford we look at how extensive those contacts were I mean Ford tried to get their products into every conceivable hand possible they use flowery language like a verifiable boatload or truckload of contacts and really talked about the efforts that Ford went into marketing this product manufacturing this product and really Ford just tried to get out of jail free by saying well guess what that product wasn't sold here. Yeah I have a bunch of questions about this because like so number one in Wyoming right Ford didn't manufacture anything they didn't sell anything right they advertised I suppose but of course Samsung advertises all over the United States too so I know that doesn't really help you very much and in the Ford opinion over and over and over again Justice Kagan talks about the product to this the product to that the product this the product that so she seems to be saying I've been you know the two concurring opinions have some criticism about the clarity of the test but she seems to be saying for an 8-0 court we care very deeply about the product and if the defendant sent the product into the relevant state it doesn't matter that this particular plaintiff was injured by a product that didn't come from the defendant's contacts with the state so as you may recall the the explorer that injures the the plaintiff in Wyoming is a used car right Ford had nothing to do with that there is no conceivable way that Ford could have known that a used explorer was going to somehow make it to Wyoming it was a secondary sale it wasn't sold at a Ford right through the stream of commerce or however you want to describe it it just got there and then it hurt the plaintiff and the court said yeah it doesn't matter because Ford is sending other products into the market so I'm having I'm hung up on that piece if you can help me. Sure and so my friend on the other side actually commented on that test but he left out the most important part at the beginning of the sentence it says companies like Ford that ship products into a brief and you can literally remove like Ford and list any of the sufficient contacts Ford had with those forum states I think those adjectives they are used to describe how involved Ford was with the market how much they tried to move these products into the Minnesota as well as Montana the advertising the 140 plus car dealerships the aftermarket sales Ford did everything possible to really get these hands on their product and here in Samsung Samsung conceded three instances of personal development one being the ESS cells which belong for solar panels and wind turbines they're massive they're the size of a refrigerator nothing to do at all does Samsung do anything to promote the use of its batteries by individuals in the United States for whatever purpose they choose not not individuals no only companies that's my point right and then the second instance is Stanley Black and Decker and those are while they are individual cells but they're directly incorporated into those power tools highly regulated and there's no access to individual use they're not sold they're not resold and then the limited cells to HP and Dell involve laptop battery packs and again someone would have to take a hammer bust that open and then pull out the circuitry just to get the cell out of it and then sell that to a vape market which raises other kinds of issues about whether this is you know fair play and substantial justice or even if Samsung can anticipate back to begin it's fair to characterize this as a fortuitous and unexpected use is that right yes I think you can characterize that as well as you know if a new employee sells it out the back door unknowing to the company but because Samsung directs its products through sophisticated channels channels where you know Stanley Black and Decker HP and Dell have real relationships real contracts real regulations that they want to abide by it is not feasible that these would end up in the hands of e-cigarette users in Texas and Samsung actively tries to prevent this but as to the and I appreciate by the way your correction I'm sorry I got Wyoming and Montana confused but appreciate the the clarification on that as to the Black and Decker consumer your point is not or maybe I'm not understanding your point are you saying that the Black and Decker consumer also couldn't sue you in Texas only the the manufacturer level so Black and Decker itself or HP itself or Dell itself could sue Samsung but that if I bought a Samsung battery because I'm a laptop or blows up in my pocket I can't see you in Texas no I think so consumers can sue you have jurisdiction and that would be a causal connection in the language of the Ford and the other cases that's correct so you're not taking the position if I understand it that there's somehow a distinction between a consumer market and a manufacturer market this isn't this is not Morgan okay so that's helpful I'd appreciate that so I don't understand then if consumers generally can sue you why can't this consumer and your answer is well we didn't want our 1850s used in e-cigarettes is that the gist of it it's not our intent it's our actions the point is your product is safer when it's implanted into some some other consumer tool right that is correct and that is also referenced in a plaintiff's petition when they cite the U.S. Fire Association report I think it's paragraph 56 or 46 but yes you're right when when these it's like putting mercury in a thermometer you don't want people to touch handle the mercury and whatever you put the mercury when you put the mercury into a thermometer it's safe that is correct judge jones it's a great analogy but uh to get back to your point this is not an instance of uh it's samsung's actions what they actually did and it's their contacts and how those contacts um relate to uh the plaintiff's injury in this case and when we look at those contacts those three contacts judge brown did a great job going through all the jurisdictional record you know parsing out what counted what didn't put them in various buckets and then isolated those three instances of personal purposeful development to really look at whether or not Mr. Etheridge's injuries arose from or related to those contacts and this really focuses on the related to requirement because we could all agree that his injuries did not arise from those contacts so this is exactly also what justice Alito and justice Gorsuch talk about is well there's now this kind of sliding scale that judges have to um look at when evaluating these cases well how related does it have to be and we talked about the Yamashita case a little bit earlier and I think they have some great language in there is one of the first courts to really grapple with the related to prong and I believe the court says something along the lines of uh relatedness serves as a proxy for causation and I think that is a perfect example of how trial court should look at jurisdictional evidence when evaluating the related to this problem I appreciate that can you do a hypothetical with me because I think you put your finger on what's hung me up on this case so let's let's take a consumer who buys a um a ford explorer in dearborn michigan now he he's from he's from montana he buys it in dearborn and he drives it home right and it explodes in montana so he's a montana consumer he buys the the the product in michigan but it's a used product right and then he he drives it home now it turns out that the reason it explodes has nothing to do with ford right it's a used car it's got 150 000 miles on it's got a bunch of aftermarket parts it has electrical issues and stuff that had all been done in a garage and whatever but he brings it home to montana and he gets hurt because his car blows up and so he sues under ford in montana his home state for this used product that he bought in michigan can ford defend by saying hey listen we are generally amenable to suit in montana we totally recognize that but not here and the reason we're not relevant here is because of this product this causation problem the causation of the injury has nothing to do with our contacts with this state it has to do with the fact that he bought a used car that had some electrical issues done in a shop in dearborn can you can they defend as a jurisdictional matter that way yes and i think you've lost me i'm just having such a hard time because it's like that that's a merits art it totally makes sense to my brain the merits not the jurisdiction yeah that's exactly my concern so what we were what i would suggest is is the court's going to have to trial court's going to have to look at the connections of where the injury occurred and whether or not ford was engaging in sufficient business under under ford were they advertising how much we'll say all the four contacts the variable truck load the trial court's going to have to look at that and then look at the causes of action by the plaintiff in that instance and so could it is there a possibility that they could have jurisdiction the answer is yes but it requires that that analysis the the exact analysis that judge brown did here to to come to that conclusion and and it is it's i think even in morgan uh the supreme court of texas uh talked about how every single case has a unique record and it really has to be contemplated i mean lgb cam has been you know in texas has been found you know without in and out of jurisdiction so it really depends on the record before the trial court and how it is analyzed to come up with those arguments what's the status of so-called stream of commerce theory is that an independent theory of jurisdiction or is that just a phrase well stream of commerce gets to what i'll call the the the purposeful availment prong of of deciding specific jurisdiction purposeful availment availment and it's it's whether or not the product enters the market uh texas is stream of commerce plus but on the federal side it's stream of commerce um it matches the slight nuance being the intent to serve the market force the ability but that's where that theory comes into play i what i know there are a lot of cases on lithium-ion batteries they're probably more since you all finished briefing are there any other uh higher court decisions uh yes as of last week um the seventh circuit i wrote it down speedy versus samsung uh cause number 23-1024 in that instance the trial court denied samsung's motion to dismiss and the court of appeals remanded it back asking very specific questions that it wanted answered because it couldn't tell from the record whether or not uh jurisdiction was appropriate and some of those questions were did samsung know that its cells were reaching consumers did they expect that these cells would reach consumers and uh what were their efforts to control uh the distribution and here i think judge brown was able to answer that because our record showed where we sold our cells showed that they were regulated and um demonstrated that it is virtually impossible outside of nefarious means to get an individual cell in texas um so in a way that is uh that's the most recent uh higher court case to go back to your um restaurant example about tainted food the first quarter uh the first circuit pardon me recently came out with capillo restaurant depot involving tainted lettuce and a guy who ate a salad in new jersey and then tried to sue the same manufacturer for dealing with lettuce in his home state it's a very similar analogy to what you brought up there um but those are the the higher court cases that i can comment on the lettuce case did you cite it in your brief no that one literally just came out so it's what that one just came out i have not cited it well you can you can uh send these to us in a 28 j letter i will your honor counsel can i ask you a market segmentation question sure um could a manufacturer of batteries sdi could they read enumerate their batteries 1851 we only sell those in main 1852 we only sell those in new hampshire 1853 we only sell those in vermont etc etc etc um and then defend a suit by saying hey we don't sell that product in texas we only sold those in bangor or leaves that question open about whether or not you can manufacture or market a certain vehicle in a state um i i think again the focus is on the contacts um and how they relate to the various injuries i you know if we're talking about maybe this the difference of the size of battery it may not matter as much but maybe if i talk about the voltage or how high power it might matter more um but that is a question that has been left open by ford if the question is so focused on the manufacturer and the way that the manufacturer markets or you know that you point to the sort of truckload of contacts and the question i'm supposed to look at just what samsung is doing and the way that they intended to market their products why would i be limited to doing it statewide why couldn't i say that the 14th amendment's due process clause would allow samsung to defend on the basis that hey we were we tried to sell these batteries in texarkana but we never intended those to reach all the way to el paso texarkana and el paso are much further apart than say vermont and new hampshire um and so we can really do the market segmentation much more granularly why would i do it on a state-by-state basis um for the most part we're looking at whether or not texas could exercise due process over um yeah but i'm really concerned about sdi and its and its attempts to market its products and its attempts to control where they go right so why would i why would i have to do it on a state-by-state basis if you have a 14th amendment right to avoid um being hailed into court in el paso well for one each each case has its own facts regarding the injuries of each plaintiff that need to look for a strong relationship with the uh contacts that the defendant might have the state so i don't i think that would be too universal to have a kind of a you can't touch me touch me here and you want that analysis for trial courts to do to say okay how am i going to determine whether or not um this plaintiff's injuries are sufficiently related to the contacts here and then you look into the contacts of the entity well the question is not really up for grabs in a federal system in other words uh the whole the whole point of these these this contacts is context with the forum state so it doesn't matter whether it's delaware or texas because the whole point is states have coherent regimes of law so i correct does the court have any other questions no thank you your honor all right okay mr taylor thank you and may it please the court just a few quick points in rebuttal um i'd like to begin with what i think i i what at least what i heard to be a pretty important concession from samsung which is that it's not pressing a market-based or market segmentation theory and so as i understand it that leaves just two arguments on the table for samsung one is the consumer misuse argument and the other is a causal link argument so on consumer misuse i took my friend's answer to your hypothetical it's not a question of consumer misuse at all it's a question whether it was a fortuitous and unexpected um appearance of the product in consumer hands in texas well i i think the he didn't say that you couldn't put a lithium-ion battery into a vape pen i don't know whether you can or not that's not the issue the issue is whether uh in the uh distribution samsung has any way of expecting that those batteries are going to come into the hands of individuals well it knows that it will come into the hand of individuals in small consumer electronic devices like power drills yes but secured in such a way and that might give them a defense on the merits i mean take a hypothetical in ford if someone if the plaintiff and ford had been going you know 180 miles an hour and the tire gave out but i didn't expect it to be used in that way and i think it might have a pretty good defense on the merits but that that's not part of the inquiry similarly if i walk down the street pick up some wd-40 and chug it and something happens to me i could still sue the manufacturer in texas or my my estate could but i might not win that claim on the merits but there indisputably would be jurisdiction and i understood my friend to agree at least when it comes to products that were originally sold in the state by samsung directly whether it's a black and decker drill that got disassembled and then there was a diverted use that was you know given to someone down the street in the vape shop whatever and i think that shows why their argument really then becomes a causal argument i mean judge ultim i think you're exactly right this is a merits question uh unexpected use and and so that just leaves them with this causal test argument and that was the very argument that was rejected by the supreme court in ford and judge ultim i read ford the same way that you do which is that the focus is on the product and i think that makes perfect sense because what the court was essentially saying there is that states have a substantial interest in ensuring that products used in their state well then give me any give me an example of some product where there would no longer be jurisdiction post ford widely well i think there could be any you know if ford for example just sold a particular model of car that was made no cars are cars might have the same brakes might have the same engine well then it would come down give me an example well i i think you would either need if it's not something if it's not something that is sold either as an embedded component part with therefore presumptively regulated you know carefully calibrated use that somehow appears on the if it's not this situation what would it be well i think i would point you to the test in ford so i think you'd either need the defendant the manufacturer not to have served a market for that product in that state so they'd have to if the only solution for in texas no i don't think that's right because that's your only other connection that's one thing it could do is the court recognized in ford and that it recognized way back when in the volt worldwide volkswagen case but it could also procure insurance it could find it could potentially even try to sort of change the the product that it actually sells in some way to make it different somehow materially than an individual cell but here it's exactly the the same cell that it was sending or it could you know just continue to write into its contracts you know restrictions that would give it a very good claim on the merits or if that fails an indemnification claim against the man the distributor for diverting the product well we don't that's absurd well we're just talking about jurisdiction talking no you're talking about the stream of commerce you're talking about any product the only connections here are that it sells it as a component part it sells the exact same product in cardboard boxes in bulk to texas companies and then a texas resident was injured by using that product in texas and that ensured that would be a direct causal connection well it but there's no direct causal connect i mean you have to concede that we we have not we can't prove that we don't know the original provenance of of this particular battery it could have been originally you know sent into to texas maybe not he bought it on the internet it bought it on the internet but it came from somewhere originally it came from you know samsung and we just don't know how it made its way into the united states but we know that it did and i think this actually if i could no thank you very much your honor okay thanks very much we stand in recess